# OUTTEN & GOLDEN LLP

*Advocates for Workplace Fairness*

Wayne N. Outten
Anne Golden
Adam T. Klein
Laurence S. Moy
Gary Phelan
Kathleen Peratis

*Of Counsel*
Jack A. Raisner
Allegra L. Fishel
Lewis M. Steel
Wendi S. Lazar

*Senior Counsel*
Paul O'Neil

Tarik F. Ajami
Piper Hoffman
Mark R. Humowiecki
Douglas C. James*
Carmelyn P. Malalis
Tammy Marzigliano
ReNika C. Moore
Linda A. Neilan
Nantiya Ruan
Anjana Samant
Justin M. Swartz

*Admitted in MD only

Writer's Direct Dial Number
(203) 363-7888 ext. 5001
Writer's E-mail Address:
nhw@outtengolden.com

March 6, 2006

Hon. Marilyn Go
United States District Magistrate
U.S. District Court for the
Easter District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Dr. Lester Fleming v. The Health Science at Brooklyn

Dear Judge Go:

      Plaintiff, with Defendant counsel David Diamond's consent, requests that this court provide him with leave to amend the complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. The complaint is amended to assert a new cause of action for invasion of privacy violation under the 14th Amendment and to clarify the specific statutory basis for the claim under the Americans with Disabilities Act of 1990, ("ADA"), 42 U.S.C. §§12112(3) and (4). At this point in the proceedings, no discovery



has taken place, and the scheduling conference was recently held in your chambers on January 31, 2006.

If this application is agreeable to the Court, we respectfully request that it be so ordered. We have included the proposed First Amended Complaint.

Sincerely,

Natalie Holder-Winfield, Esq.

c:   Hon. Raymond Dearie
     David Diamond
     Lester Fleming
     Gary Phelan

OUTTEN & GOLDEN LLP

Gary Phelan, Esq.
Attorneys for the Plaintiff
4 Landmark Square
Suite 201
Stamford, CT 06901
(203) 363-7888

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
| | | |
|---|---|---|
| DR. LESTER FLEMING | : | Index No. 05CV5386 |
| | : | |
| Plaintiff, | : | FIRST AMENDED |
| v. | : | COMPLAINT |
| | : | |
| THE HEALTH SCIENCE CENTER | : | JURY TRIAL |
| | : | DEMANDED |
| AT BROOKLYN, | : | |
| | : | |
| Defendant. | : | |
| | : | |

-----------------------------------------------------------------x

Plaintiff, Dr. Lester Fleming, by his attorneys Outten & Golden LLP, amends this Complaint, and alleges as follows:

## NATURE OF THE ACTION

1. Dr. Lester Fleming, brings this action to recover damages caused by the Defendant's violations of U.S.C. Const. Amend. 14, Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112(3) and (4), §504 of the Federal Rehabilitation Act of 1973, as amended (29 U.S.C. § 794) ("Section 504"), the New York Executive Law, §§269 et seq. ("Executive Law"), and the Administrative Code and Charter of the City of New York, §§8-107.1 et seq. ("NYCHRL").

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §1331. Jurisdiction as to the causes of action arising under the Executive Law and the Administrative Code is conferred upon this Court by and under the principles of supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), because they arise out of a common nucleus of operative facts with the federal claims.

3. The parties to this action reside in and regularly do business within the jurisdiction of this Court. A substantial portion of the events at issue took place within the Eastern District of New York. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) and (c) and C.P.L.R. §302(a).

## PARTIES

4. The Plaintiff, Lester Fleming, M.D., is a citizen of the United States who lives at 68 West 132nd Street, Apt. #3, New York, New York 10037. Dr. Fleming was employed by Defendant, The Health Science Center at Brooklyn, within the meaning of 42 U.S.C. § 12111(5)(A). The Health Science Center at Brooklyn perceived Dr. Fleming as an individual with an impairment that substantially limited one or more of his major life activities, within the meaning of the ADA. Dr. Fleming was also an individual with a "disability" within the meaning of the Executive Law and the Administrative Code. At all times during his employment with Defendant, Dr. Fleming was able to perform the essential functions of his

2

position, with or without reasonable accommodation; therefore, he was a "qualified individual with a disability" as defined by the ADA, 42 U.S.C. § 12131(2) and Section 504.

5. Defendant The Health Science Center at Brooklyn is a medical center in New York, which maintains offices and a regular place of business at 470 Clarkson Avenue, Brooklyn, NY 11203. The Defendant is a "public entity" as defined by the ADA, 42 U.S.C. §12131(1), and a "federal fund recipient" as defined by § 504. The Health Science Center at Brooklyn is an "employer" under 42 U.S.C. § 12111(5)(A), § 292 of the Executive Law and §8-102 of the Administrative Code because, at all relevant times, The Health Science Center at Brooklyn was engaged in an industry affecting commerce and employed fifteen or more employees for each working day during each twenty or more calendar weeks in the current or preceding calendar year.

## PROCEDURAL BACKGROUND

6. On November 1, 2005, Dr. Fleming filed a timely charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant The Health Science Center at Brooklyn discriminated against him because of his perceived disability. Title II of the ADA, which incorporates the enforcement provisions of Section 505 of the Rehabilitation Act,

3

does not require of exhaustion of administrative remedies. 42 U.S.C. § 12133 and 29 U.S.C. § 794a(a)(2).

## FACTUAL ALLEGATIONS

### Medical Group Hires Dr. Fleming

7. Dr. Fleming is an anesthesiologist who was diagnosed with sickle cell anemia.

8. Sickle cell anemia is a disease involving abnormally shaped red blood cells, which have difficulty circulating properly through the body. Sickle cell anemia is an inherited disease in which the red blood cells, normally disc-shaped, become crescent-shaped. As a result, they function abnormally and cause small blood clots. Individuals are most often well, but their lives are punctuated by periodic painful attacks. Sickle cell anemia affects African-Americans almost exclusively. According to the Center for Disease Control, sickle cell disease affects over 50,000 adults.

9. Despite having sickle cell anemia, Dr. Fleming has successfully completed competitive academic programs and rigorous professional programs.

10. In 1991, Dr. Fleming graduated from the State University of New York at Binghamton with a Bachelor of Arts in English.

11. In 1997, he graduated from City University of New York at City College with a Bachelor of Science in Biology.

12. In 2001, Dr. Fleming graduated with a Doctor of Medicine degree from Medical College of Pennsylvania-Hahnemann School of Medicine.

13. In 2002, Dr. Fleming completed his medical internship at Washington University in St. Louis, Missouri.

14. In August 2005, Dr. Fleming successfully completed his medical residency, specializing in anesthesiology, at The Health Science Center at Brooklyn.

15. In April 2005, Dr. Fleming applied for an anesthesiologist position with Yuma Regional Medical Center ("YRMC") and was interviewed by Yuma Anesthesia Medical Services Group ("YAMS").

16. In May 2005, YRMC and YAMS offered Dr. Fleming a position as an anesthesiologist. YAMS and YRMC mailed an employment contract to Dr. Fleming in New York, where he signed it and returned it to YRMC and YAMS. Once YRMC and YAMS executed their portion of the contract, they mailed a copy of the contract, with the signatures of three of their partners, to Dr. Fleming. Under his employment contract with YRMC and YAMS, Dr. Fleming's annual salary would be approximately $360,000.

5

17. In July 2005, YRMC facilitated Dr. Fleming's search for housing in Arizona by paying for his travel to Yuma and hiring a moving company to move his furniture.

18. Dr. Fleming was scheduled to move to Yuma on September 12, 2005, and to start working for YRMC and YAMS on October 3, 2005.

## The Health Science Center at Brooklyn Divulges to YRMC and YAMS that Dr. Fleming Has Sickle Cell Anemia

19. On August 28, 2005, Dr. R. Khona, a YAMS partner, called and left a voicemail message informing Dr. Fleming that his scheduled move to Arizona was cancelled because of a "problem with his credentialing."

20. Credentialing is a time-intensive process where hospitals gather and review academic and professional information about the physicians who have applied to work in their facilities. A hospital must credential a physician before he or she may begin to work.

21. On August 29, 2005, Dr. Fleming called Dr. Khona for clarification and to learn if there were any other issues besides his credentialing. Dr. Khona replied that he was not in a position to elaborate.

6

22. On August 30, 2005, Dr. R. Watson, YAMS' Acting Chairman, contacted plaintiff by telephone on behalf of the other YAMS partners to clarify the credentialing process. Dr. Watson told Dr. Fleming that "red flags were raised after we received your Residency Director's letter . . . the hospital is in the process of contacting your hematologist/oncologist."

23. During their telephone conversation on August 30th, Dr. Watson recommended that Dr. Fleming seek alternative employment because his credentialing could not be guaranteed.

24. On September 1, 2005, Dr. Fleming met with Dr. D. Diuguid, his hematologist/oncologist, regarding his employment with YRMC and YAMS.

25. Dr. Diuguid told Dr. Fleming that YRMC had sent him a letter asking that he confirm a statement made by The Health Science Center at Brooklyn's Residency Director, Dr. Audree Bendo. On information and belief, Dr. Bendo informed YAMS and YRMC that Dr. Fleming had sickle cell anemia.

26. The only interruption in Dr. Fleming's residency had been in April 2005, and it had not been caused by his sickle cell anemia. Rather, Dr. Fleming had taken a one-month leave of absence to grieve the loss of his sister who had passed away in January, 2005, due to complications related to sickle cell anemia.

7

27. Throughout Dr. Fleming's medical residency, he worked the same schedule as the other residents, without any accommodation for his disability.

28. Dr. Fleming did not openly discuss his sickle cell anemia. However, he had discussed it, in confidence, to Dr. Audree Bendo in July 2002, early in his residency.

## YRMC and YAMS Rescind Dr. Fleming's Initial Employment Offer

29. On September 29, 2005, Dr. Fleming participated in a conference call with YRMC and YAMS' Drs. Patel, Khona and Rojas. During this conversation, they interrogated Dr. Fleming about his health and questioned his ability to work in their medical practice.

30. During the conversation on September 29th, they explained that physicians in their practice sometimes work schedules of up to 36 straight hours. Dr. Fleming responded that during his residency, he worked similar hours without ever requesting an accommodation. Dr. Patel responded that she did not care about Dr. Fleming's previous schedule; she only cared about what would happen if he worked for YAMS and YRMC.

8

31. At one point during the conversation on September 29th, Dr. Khona advised that if Dr. Fleming was scheduled to work and got sick he should not expect anyone to help him.

32. Dr. Khona also said during the conversation on September 29th, "I don't know of any insurance company that would insure you once they know that you have sickle cell anemia. Did you think about that? . . . Why didn't you tell us that you had sickle cell anemia?"

33. Defendants YAMS and YRMC believed that Dr. Fleming would not be able to obtain insurance because of his sickle cell anemia.

34. During the conference call on September 29th, Drs. Patel, Khona and Rojas told Dr. Fleming that he would need to sign an addendum to his employment contract if he still wanted to work for them. Dr. Khona would not give specific details about the addendum other than telling Dr. Fleming that he would be responsible for his own cases and calls. They asked if he would agree to sign it; Dr. Fleming said that he would need to see it first. Drs. Patel, Khona and Rojas agreed to forward the addendum to Dr. Fleming.

35. YAMS and YRMC sent the two-page addendum to Dr. Fleming on November 4, 2005, five weeks after he was originally scheduled to start working. Since October 3, 2005, Dr. Fleming called YRMC and YAMS repeatedly in an attempt

9

to obtain a copy of the addendum. The YAMS doctors told Dr. Fleming that their lawyers were "working on it."

36. Amongst other adverse changes to the original employment contract, the addendum provided that he could only work for YRMC and YAMS if he agreed that it would not be possible to provide him a reasonable accommodation for his operating room and call schedules.

37. Although it has been over five weeks since Dr. Fleming was scheduled to start working for YRMC and YAMS, they will not allow him to work unless and until he signs the addendum to his employment agreement.

38. On November 9, 2005, Dr. Fleming notified YAMS and YRMC that he would not sign the proposed addendum to the employment agreement he entered into in May, 2005.

39. As a result of The Health Science Center at Brooklyn's disclosure of Dr. Fleming's medical condition, YAMS and YRMC constructively terminated the Plaintiff.

40. The Health Science Center at Brooklyn perceived Dr. Fleming as being substantially limited in one or more major life activities including, but not limited to, working, as defined by the ADA and Section 504.

41. The Defendant's actions set forth in this Complaint, including the actions of its employees, were intentional and willful.

42. At all relevant times, Dr. Fleming was qualified to perform the essential functions of the job of an anesthesiologist, with or without a reasonable accommodation.

43. As a result of the Defendant's actions, Dr. Fleming has suffered damages, including but not limited to the loss of wages and benefits, loss of professional opportunities, and emotional distress and mental pain and anguish.

## LEGAL CLAIMS

### FIRST COUNT

**The Health Science Center at Brooklyn Violated Dr. Fleming's Right to Privacy Under U.S.C.A. Const. Amend. 14**

44. Paragraphs 1-43 are incorporated by reference the same as if fully pleaded herein.

45. Dr. Fleming was discreet about his medical condition, and his medical records were confidential.

46. Defendant The Health Science Center at Brooklyn wrongfully disclosed to YRMC and YAMS that Dr. Fleming had sickle cell anemia, without obtaining Dr. Fleming's consent.

11

47. The Health Science Center at Brooklyn is a state institution and is forbidden from disclosing its employees' private medical records.

48. Dr. Fleming worked for The Health Science Center at Brooklyn from July 2002 to August 2005.

49. Defendant The Health Science Center at Brooklyn violated Dr. Fleming's right to privacy by disclosing his medical condition in violation of U.S.C.A. Const. Amend. 14.

50. Dr. Fleming has suffered damages as a result of The Health Science Center at Brooklyn's unlawful acts, including past and future lost wages and benefits related to losing his position at YRMC and YAMS, severe emotional trauma, and the costs of bringing this action, including attorneys' fees.

## SECOND COUNT

**The Health Science Center at Brooklyn Wrongfully Disclosed Dr. Fleming's Private Medical Information in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112(d)(3) and (4)**

51. Paragraphs 1-43 are incorporated by reference the same as if fully pleaded herein.

52. Dr. Fleming was discreet about his medical condition, and his medical records were confidential.

53. Defendant The Health Science Center at Brooklyn wrongfully informed YRMC and YAMS that Dr. Fleming had sickle cell anemia, without obtaining Dr. Fleming's consent.

54. The Health Science Center at Brooklyn is a state institution that receives federal funding and is forbidden from disclosing its employees' private medical records.

55. Dr. Fleming worked for The Health Science Center at Brooklyn from July 2002 to August 2005.

56. Defendant The Health Science Center at Brooklyn violated the ADA by disclosing Dr. Fleming's medical condition in violation of 42 U.S.C. §§12112(d)(3),(4).

57. Dr. Fleming has suffered damages as a result of The Health Science Center at Brooklyn's unlawful acts, including past and future lost wages and benefits related to losing his position at YRMC and YAMS, severe emotional trauma, and the costs of bringing this action, including attorneys' fees.

### THIRD COUNT

**The Health Science Center at Brooklyn Wrongfully Disclosed Dr. Fleming's Private Medical Information in Violation of the Rehabilitation Act  
29 U.S.C. § 704**

13

58. Paragraphs 1-43 are incorporated by reference the same as if fully pleaded herein.

59. Dr. Fleming was discreet about his medical condition, and his medical records were confidential.

60. Defendant The Health Science Center at Brooklyn wrongfully told YRMC and YAMS that Dr. Fleming had sickle cell anemia, without obtaining Dr. Fleming's consent.

61. The Health Science Center at Brooklyn is a public entity that receives federal funding and is forbidden from disclosing its employees' private medical records.

62. Defendant The Health Science Center at Brooklyn violated Section 504 when it revealed Dr. Fleming's confidential medical condition.

63. Dr. Fleming has suffered damages as a result of The Health Science Center at Brooklyn's unlawful acts, including past and future lost wages and benefits, related to losing his position at YRMC and YAMS, severe emotional trauma, and the costs of bringing this action, including attorneys' fees.

## FOURTH COUNT

**The Health Science Center at Brooklyn Subjected Dr. Fleming to Unequal Terms and Conditions of Employment in Violation of the New York State Human Rights Law N.Y. Exec. L. §§ 290 et seq.**

64. Paragraphs 1-43 are incorporated by reference the same as if fully pleaded herein.

65. Dr. Fleming's medical condition as described in this Complaint is a medical impairment resulting from genetic conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques. As a result, Dr. Fleming had a disability within the meaning of the Executive Law. N.Y. Exec. L. § 292(21).

66. Defendant perceived Dr. Fleming as having a disability within the meaning of the Executive Law. N.Y. Exec. L. § 292(21).

67. Dr. Fleming worked for Defendant from July 2002 through August 2005.

68. The Executive Law prohibits an employer from discriminating on the basis of actual or perceived disability. N.Y. Exec. L. § 296.

69. By its actions, Defendant The Health Science Center at Brooklyn violated the Executive Law when it disclosed Dr. Fleming's medical condition to Dr. Fleming's prospective employer. N.Y. Exec. L. § 296.

70. Dr. Fleming has suffered damages as a result of Defendant's unlawful acts, including past and future lost wages and benefits, related to losing his position at

YRMC and YAMS, severe emotional trauma, and the costs of bringing this action, including attorneys' fees.

## FIFTH COUNT

### The Health Science Center at Brooklyn Subjected Dr. Fleming to Unequal Terms and Conditions of Employment in Violation of the New York City Human Rights Law N.Y. City Admin. Code §§ 8-101 et seq.

71. Paragraphs 1-43 are incorporated by reference the same as if fully pleaded herein.

72. Dr. Fleming's medical condition as described in this Complaint is a medical, impairment. As a result, he has a disability within the meaning of the New York City Human Rights Law. N.Y. City Admin. Code § 8-102(16).

73. Dr. Fleming worked for Defendant from July 2002 through August 2005.

74. The New York City Human Rights Law prohibits an employer from discriminating on the basis of actual or perceived disability. N.Y. City Admin. Code § 8-107.1(a).

75. By its actions, Defendant The Health Science Center at Brooklyn violated the New York City Human Rights Law when it disclosed Dr. Fleming's medical condition to prospective employer. N.Y. City Admin. Code §8-107.1(a).

16

76. Defendant perceived Dr. Fleming as being disabled within the meaning of the Administrative Code. N.Y. City Admin, Code § 8-102(16).

77. Dr. Fleming has suffered damages as a result of Defendant's unlawful acts, including past and future lost wages and benefits, related to losing his position at YRMC and YAMS, severe emotional trauma, and the costs of bringing this action, including attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Accept jurisdiction over this action;

2. Order the Defendant to compensate the Plaintiff for his past and future loss of wages and benefits, plus interest;

3. Enter judgment in favor of the Plaintiff for such amount as may be awarded by a jury for compensatory damages for his physical and emotional trauma and loss of enjoyment of life;

4. Enter judgment in favor of the Plaintiff for such amount as may be awarded by a jury for punitive damages;

5. Award to the Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

6. Grant such additional or alternative relief as may appear to the court to be just and equitable.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated:  New York, New York
        March 6, 2006

                                    Respectfully submitted,

                                    OUTTEN & GOLDEN LLP

                                    By /s/ Gary Phelan
                                    Gary Phelan, Esq. (GP0500)
                                    Attorneys for the Plaintiff
                                    4 Landmark Square
                                    Suite 201
                                    Stamford, CT  06901
                                    (203) 363-7888

                                    Natalie Holder-Winfield, Esq.
                                    (NH6516)
                                    Attorney for the Plaintiff
                                    4 Landmark Square
                                    Suite 201
                                    Stamford, CT  06901
                                    (203) 363-7888

18